## Case No. 2,348.

In re CAMPBELL. Ex parte CAMPBELL. Ex parte WIGG.

[17 N. B. R. 4;[1] 3 Hughes, 276.]

District Court, W. D. Virginia. Dec. 13, 1877.

BANKRUPTCY — VOLUNTARY SUBMISSION OF CLAIM — FAILURE OF ADVERSE CLAIMANTS TO OBJECT — EQUITY JURISDICTION — WIFE'S SEPARATE ESTATE.

1. An assignee in bankruptcy filed a petition asking a reference to the register, with instructions to take an account of liens binding upon the bankrupt's real estate, and of their priorities, and to summon lien creditors to show cause against a sale of the real estate free of incumbrances. Pending that petition, in court, in term, and in consequence of it, the bankrupt's wife preferred her petition in court, praying a settlement out of a certain parcel of the bankrupt's real estate. By the same order of court which granted the prayer of the assignee's petition, the wife's claim for a settlement was also referred to the register, with instructions to take evidence and to make report in regard to it, as well as in regard to liens and their priorities. Six weeks after this order of reference, to wit, on the 8th of December, 1877, the assignee and all lien creditors having been summoned before the register and been present before him, and being still before him, the register made up his report as to the liens, and as to the wife's claim for a settlement. On the 12th of December, 1877, the register presented his report in court, in term, the assignee and lien creditors being present in person, or by counsel; and the assignee then filed exceptions to the report, these exceptions relating only to that part of the register's report which treated of the bankrupt's wife's claim for a settlement. On this state of facts, it was, on sundry exceptions, *held*, that although the wife could not have been required to submit her claim to the judgment of the bankruptcy court in the summary bankruptcy proceeding, yet that it was competent for her to waive her right to an adjudication on plenary proceedings, and to submit voluntarily to the adjudication of the bankruptcy court.

[Cited in Re McKenna, 9 Fed. 29.]

2. In the summary bankruptcy proceeding, it was sufficient that the assignee and lien creditors had had opportunity to produce evidence and make argument before the register against the wife's claim for a settlement, and to file exceptions to the register's report; and that they had had a day in court to object to the report of the register; and that, therefore, they had no right to insist that the wife, against her wish, should be driven to a plenary proceeding in another court.

3. The clause third of section 4972, Rev. St. U. S., gave full jurisdiction to the bankruptcy court over the subject matter of the wife's "specific claim" to a settlement out of the bankrupt's estate; and that her coming voluntarily into the bankruptcy court, by petition, to assert that claim, gave the bankruptcy court jurisdiction, personally as to herself, to "ascertain and liquidate" that claim.

4. Where a wife's separate estate has been changed from one form of investment to another by agreement between herself and her husband, and, before the title in the property newly acquired had been made to her, the husband becomes bankrupt, the bankruptcy court, as a court of equity, in a case where its jurisdiction is clear, will treat that as done which ought to have been done, and decree a settlement upon the wife of property acquired with her separate means.

[1] [Reprinted from 17 N. B. R. 4, by permission.]

In bankruptcy. On the 15th of September, 1877 [T. P. Wigg], the assignee in this cause filed his petition, describing in detail certain various tracts of real estate belonging to [Edward M. Campbell] the bankrupt; among others a one-acre lot of ground near Abingdon, containing a large brick house, the dwelling of the bankrupt and his family, valued at eight thousand dollars. It set forth also that he had already advertised another valuable tract of land, or farm, belonging to the estate, to be sold in connection with other contiguous parcels belonging to other persons, which other tracts had been advertised for sale at the same time with this one; and it prayed leave of the court to go on and make instant sale of this farm. It set forth the fact that various judgment liens existed which bound all the real estate of the bankrupt; prayed for process to bring these lien creditors in, to assert their liens and show cause why the lands of the estate should not be sold free from them; and, in the event that no cause should be shown to the contrary. it prayed that a sale might be made of the lands free from incumbrances. The petition was partially considered on the first day of the then ensuing fall term of the court, and the prayer for leave to make immediate sale of the farm was denied, on the ground that lien creditors had not had a day in court, nor opportunity to show cause against the sale; and that no account of the liens (and their priorities) binding upon the real estate had been taken and reported to the court. On the same day, or early in the term of the court, Ellen S. Campbell, the wife of the bankrupt, filed her petition, asserting a claim upon the acre lot and dwelling-house which has been mentioned, the principal recitals and prayers of which are as follows: She set out that "her husband had surrendered sundry parcels of real estate, consisting of a farm, house and lot, in Abingdon, and other property in the county of Washington, of the value of about twenty-three thousand dollars, and personal property and choses in action of the estimated value of some twenty-nine thousand dollars. Among the real estate surrendered is the house and lot where she and her husband and family now live, valued at nine thousand dollars. She would represent that she is the daughter of James L. White, whose estate was a valuable one. Some seven thousand dollars of the property which she inherited from her father's estate has been sold, and the proceeds applied in the main, to the extent of about six thousand dollars, to the building of this house where she now lives; and which, as before stated, has been surrendered by her husband in bankruptcy. It was always understood that this property was to be conveyed to her, inasmuch as her own means to a large extent were expended in the building of the house, as before stated, but that has not been done. No regular conveyance, as she is informed, has yet been made of that property to her husband, but he is the equitable owner of said property. She is now forty-two years of age, and is the mother of eight children who are now living. The youngest of these children is two years old, and the eldest is about nineteen. The only property of which she is now the owner in her own right is about three shares in the stock of the Holston Salt and Plaster Company, at Saltville, valued at some two hundred and ninety dollars; sixty-eight shares in the stock of the Lead Mines Company, in Wythe county, of the nominal value of twenty dollars per share, and which ordinarily yields to her per annum the sum of one hundred and twelve dollars; and an interest in the Goose Creek Salt Works, in Kentucky, worth some one hundred and fifty or two hundred dollars. Her husband having surrendered all his property in bankruptcy, this is the only means left her, of her father's estate, for the support of herself and family, except the amount which her husband may be able to make by his profession. Inasmuch as her means, to the extent of at least six thousand dollars, have been expended in building the house aforementioned, with the understanding aforementioned, she is advised that she is entitled to an equitable settlement out of the estate surrendered by her husband in bankruptcy. She would represent that she is also entitled to her contingent right of dower in the real estate surrendered by her husband, who is now fifty-two years of age. Whilst she is aware that she can claim nothing upon this score now, but if any allowance is made her it must be done with the consent of her husband's creditors—yet she is willing to relinquish her claim to dower, if proper compensation is given her by the said creditors; and she believes it will be to her interest, and to the interest of her husband's creditors, that such arrangement should be made, by the assignee, as will relieve the real estate of her husband of her contingent right of dower. To the end that both these objects may be accomplished. she asks that your honor will make an order requiring and directing the assignee of her husband to file a petition convening all the lien creditors of her husband, and those who are not lien creditors, who have proved their debts, and herself, so that the first question may be settled and passed upon by your honor, and so that such an arrangement may be made with the creditors upon the second question as will enable the assignee to sell the real estate of her husband free from her claim of dower; and she resorts therefore to your honor's court. She asks that no sale be made of the house and lot where she now lives until these questions are settled; that the assignee be directed to offer the other real estate for sale in both ways; i. e., subject to her contingent right of dower, and free from her contingent right of dower; and report both sales to your honor's court, so that it may be seen what dif-

ference there will be in the sales, and thus both herself and the creditors will be better prepared to know what she really ought to have for her contingent right. And your petitioner prays that such relief may be extended to her as the nature of her case may require, and as in duty bound, etc." It also appeared in the proofs that the legal title in the home property was still outstanding in the person from whom it had been purchased before the dwelling-house was erected; and that it had been so held for the purpose, at some convenient time, of its being conveyed to the use of Mrs. Campbell; a purpose, however, which had been delayed by the intervention of the liens of judgments recovered against the husband, the bankrupt.

On these two petitions, expressly named in its order, the court on the 31st of October, 1877, referred all matters therein recited to the register, with directions to proceed according to law, to notify the lienors of said bankrupt of his taking an account of liens and their priorities, so that an order for the sale of the estate of said bankrupt might be made free of incumbrance ; and directing the register "to report said liens and their priorities, including therein the claim of Mrs. Ellen S. Campbell for an equitable settlement out of the estate of her husband, presented by her in her petition." The decree directed him "to make his report to the court, if practicable, before the adjourned term thereof, to be held at Abingdon on the 10th of December, 1877." The register was orally instructed by the judge in open court to give personal notice of his taking the account of liens, and of his inquiry into all matters referred to him, to all lien creditors and to the assignee; and it is not denied that he did give such personal notice. Under this order, most of the lien creditors, if not all of them, being present in court by counsel when it was made, the register afterwards proceeded to take the account of liens, after giving personal notice to all lien creditors and to Mrs. Campbell, and to take evidence on Mrs. C.'s claim. Having concluded his examination, he made up his report on the 8th of December, in his office, and filed it in open court on the 12th of December, 1877, during the adjourned term which was held from the 10th to the 14th days of that month. As to Mrs. C.'s claim, he said as follows in his report: "In regard to the claim of Ellen S. Campbell, I submit her proposition (petition) marked E. S. C., for an equitable settlement out of the estate of her husband, E. M. Campbell, and to which no exceptions have been taken, *and therefore report that it be allowed.* From the deposition of E. M. Campbell and others filed in this cause, I find that about six thousand dollars of the means of Mrs. E. S. Campbell, derived from her father's estate, were expended in the erection of the house in which she now lives." The regis-

ter added the words in italic, at the suggestion of the judge after his report was presented in court, in order to make it responsive to the order of reference. There was no exception to the register's report as to other matters. As to Mrs. Campbell's claim the following exceptions were filed in court on the day after filing of the register's report: "T. P. Trigg, assignee of said bankrupt, excepts to the report of John W. Stallard, register, filed the eighth day of December, 1877; and for cause of exception assigns the following, viz.: '1. Because the register has not made a report in accordance to the decree. Instead of reporting whether Mrs. Ellen S. Campbell is entitled to an equity of settlement, he merely refers the court to her petition claiming such settlement. He makes no report at all as to the amount she is entitled to by way of such settlement. 2. The said report cannot be acted on at this time; because the same was not filed in time to give the assignee and creditors an opportunity to examine the same, and except thereto before the same came up for confirmation; the claim being filed on the 8th of December, 1877, with the register, and the affidavits in support of said claim being taken on that day, without notice, and the report concluded on the 10th. 3. Because there was no process issued or opportunity given to the assignee or the unsecured creditors to answer the petition of Mrs. Ellen S. Campbell for an equity of settlement. 4. Because the creditors whose claims are unsecured, who have proven their debts, were never notified to show cause against the allowance of the claim of Mrs. Ellen S. Campbell for an equity of settlement. 5. Because the said report is based solely upon testimony that is illegal and improper in this cause, the only testimony being that of E. M. Campbell, who is the husband of the claimant of the equity of settlement, and of other parties who derived their information by hearsay of the said husband. It was not competent for the register to base any report upon such evidence. In no case can the husband or wife be a witness for or against each other. 1 Greenl. Ev. § 334, &c. 6. Because the statements in the petition, even though proved, would not be sufficient to entitle the claimants to an equity of settlement. The wife's equity attaches only when resort must be, or is actually had to a court of equity to reduce her property into her husband's possession, or complete his title thereto. In the case at bar the title of the husband was complete, and he had actually converted the property of the wife, and appropriated the same; thus her right to an equity of settlement is gone. See Poindexter v. Jeffries, 15 Grat. 363; 1 Minor, Inst. 307, 308. 7. Because there is no property out of which the claimant can claim a settlement; and, even if there was, there is no proof in the case, nor-

is there anything in the record or the report to show the amount of the property out of which she might make such a claim: or that her condition, or that of her husband is such as to induce the court to make a settlement. The allegations of her petition or claim cannot be taken as true, because there was no process upon the same or opportunity given the assignee or creditors to answer or deny it.'" No objection was made to any part of the register's report, except that part relating to Mrs. Campbell's claim, and the exceptions of the assignee thereto.

White & Buchanan and Daniel Trigg, for assignee.

1. As to proper mode of procedure, see Stickney v. Wilt, 23 Wall. [90 U. S.] 150; Smith v. Mason, 14 Wall. [81 U. S.] 419.
2. As to evidence offered: First. Husband's testimony inadmissible in favor of wife. Rev. St. U. S. p. 162, § 858; Code Va. 1873, p. 1110, c. 172, § 22; Saunders v. Ferrill, 1 Ired. 97; 7 U. S. Dig. p. 277. Second. Testimony of third parties as to statements made by husband inadmissible. Saunders v. Ferrill, 1 Ired. 97; Lewis v. Caperton, 8 Grat. 148.
3. On the merits: 1 Minor, Inst. (1st Ed.) 325; Poindexter v. Jeffries, 15 Grat. 363; Cronie v. Hart, 18 Grat. 739; 1 White & T. Lead. Cas. Eq. (4th Am. Ed.) pt. 2, p. 672; Pool v. Morris, 29 Ga. 374; Taggart v. Boldin, 10 Md. 104; Gross v. Reddig, 45 Pa. St. 406; Lyne v. Bank of Kentucky, 5 J. J. Marsh. 545; Hatch v. Gray, 21 Iowa, 29; Lewis v. Caperton, 8 Grat. 148.

Gilmore Penn, for Mrs. Campbell.

The statements of petition must be regarded as true, no answer denying them having been put in by any one. The assignee had full knowledge of the petition of Mrs. E. S. Campbell. The order directing the register to report upon the claim of Mrs. C., among other incumbrances, was in pursuance of assignee's petition theretofore filed. See decree of Sept. 11, 1877, and Oct. 31, 1877. The statements of the petition are substantially confirmed by the depositions of Dr. Campbell, the bankrupt, Jno. Kreger, and James Fields. In the notes on Dyer v. Dyer, 1 White & T. Lead. Cas. Eq. (4th Am. Ed.) pt. 1, p. 282, it is said that a resulting trust arises where a purchase is made by a husband with the proceeds of the wife's separate estate, or with money bequeathed to her, whether the deed is made in his own name or in that of a third person. Methodist Episcopal Church v. Jaques, 1 Johns. Ch. 450, 3 Johns. Ch. 77; Dickinson v. Codwise, 1 Sandf. Ch. 214; Pinney v. Fellows, 15 Vt. 525. Where money of wife, not reduced to possession by husband, has been invested in land and title taken by husband, there is a resulting trust good against creditors. 2 Story, Eq. Jur. (12th Ed.) p. 443, § 1201, note 2; Click v. Click, 1 Heisk. 607. In this case no conveyance has ever been made to Dr. C. The wife's funds, therefore, will be regarded in a court of equity as never having been reduced to possession by husband. Its character has only been changed from one piece of property to another, and will be regarded as now only in transitu. And whenever this is the case, and the court can lay hold of the property, it will do so, and will not permit the creditor of the husband to take it, unless upon condition that a fair, equitable settlement be made upon the wife and children. Notes to Murray v. Lord Elibank, 1 White & T. Lead. Cas. Eq. 634, etc. The statements of petition in this case, together with the depositions taken and filed, show that Dr. C. not only did not reduce the property of his wife to possession; but also, that he refused to have the deed to the same made to himself. So, where the money of wife had been reduced to possession by husband, and the husband had only taken a bond for title, and had come to equity to get title. Mallory v. Mallory, 5 Bush, 464. If the conveyance in this case had been made to Dr. Campbell, then it might be necessary to show that there was an agreement between Dr. C. and his wife, that the property purchased by him with her funds should be held by him for her, or should be conveyed to her. But see opinion of Chief Justice Williams in Mallory v. Mallory, 5 Bush, 466, and Sims v. Spaulding, 2 Duv. 121. It is submitted that such proof has been offered as would be necessary to fasten a trust upon him, to the amount of the money of his wife so expended, even if the conveyance had been made to him. In such a case as this, the declaration of the husband to show the purpose for which the payments were made, may be given in evidence. 1 White & T. Lead. Cas. Eq. 642, etc.; 2 Story, Eq. Jur. § 1201.

HUGHES, District Judge. As to the first exception of the assignee, it is true that, when first presented to the court, the register's report recommended nothing as to Mrs. Campbell's claim; but, on the judge's suggestion that the register should recommend either the allowance or disallowance of the claim, the words recommending the allowance were inserted by the register in court. This amendment removes the technical objection; and the first exception, which is only a technical one, is overruled. 2. The second exception is also overruled. The claim of Mrs. Campbell was set forth in full, and preferred by her in her petition presented in open court, at the October term. It was one of the matters expressly referred to the register, by the order of the 31st Oct., 1877, made on the petition of the assignee. In pursuance of that order, the creditors were convened by the register to show cause against the claim and against a sale free of incumbrances, some time before he made up his report. They accepted legal service of his summons to appear before him. After a full hearing by

him and full opportunity given to all for objecting to his report, it was made up on the 8th December, while the lien creditors were still before him, and with their full knowledge. With the knowledge of them all, he filed the report in open court on the 12th; and the assignee filed his exceptions to it on that day; and all have now been fully heard by the court in opposition to its allowance. The matter was before the register from 31st of October until the 12th December; and the creditors had the greater part of that time to put in their evidence, and file their arguments and objections against the allowance claimed by Mrs. Campbell. They also had a day and did make full argument against it in court.

The bankruptcy proceeding is essentially a summary one. The action of the bankruptcy court, in regard to the real estate of this bankrupt, and to the liens and claims upon it, was invoked by the assignee himself. The proceeding taken on his motion, though necessarily summary in form, has been with full opportunity given for all parties in interest to be fully heard; and it is not competent for the assignee to object that he has failed to avail himself of the opportunities afforded him on his own motion, for making good his case.

3. The third objection is overruled. It was on the petition of the assignee that the reference to the register was made, and that the lien creditors and all persons having claims upon the real estate were convened. It was in consequence of such petition of the assignee to sell clear of all incumbrances, that Mrs. Campbell presented her claim by petition, and that it was referred, along with other claims, to the register. The assignee had full notice of this claim by the proceedings in court; and as to the proceedings before the register, it was he, virtually, who was summoning and convening incumbrancers, and not they him. It was his duty to appear before the register without summons; and, in point of fact, he was there diligently, both in person and by counsel. It does not lie in his mouth, therefore, to say that he was not summoned before the register during his action upon a reference which the assignee himself had procured.

4. The fourth objection is overruled. The general creditors are represented, in all matters in bankruptcy, by the assignee. They are generally so numerous that it is not practicable to convene them for any purpose except to vote in the election of an assignee, and on the subject of dividends. It is not the policy of the bankruptcy law to convene them on other questions. It gives them no power to act on other questions. This assignee was in fact present before the register, and represented all general creditors. The action of the assignee in now resisting the allowance, is the action of the creditors. They could do no more than he is doing for them; and the objection, that they have not been convened each in person, is not well taken. He is, in all respects, their agent, attorney, and representative by statutory appointment.

5. The fifth exception is overruled. In bankruptcy proceedings the bankrupt may be at any time examined by the register and by the court. As to all matters concerning his estate, he is a competent witness; and no objection can lie to his testimony, save to its credibility. See section 5086, Rev. St. U. S., and section 8 of the amended bankruptcy act of June, 1874 [18 Stat. 180], and Bump, Bankr. § 5086a. So also may the wife of a bankrupt be examined in bankruptcy. See Id. §§ 5087, 5088. And, generally, in the courts of the United States, "no witness shall be excluded in any civil action because he is a party to or interested in the issue tried." Rev. St. U. S. p. 162, § 858.

6. The question raised by the sixth exception is one of more serious moment. The facts of the case seem to have been misapprehended by the exceptant. There has been no consummated conversion here, by the husband, of the wife's separate estate, as exceptant claims; and the case of Poindexter v. Jeffries, 15 Grat. 363, and those like it, do not apply. There has been in this case a change of investment, from some other form, into the form of a dwelling-house near Abingdon; but the title of that property has not yet been made to the separate use of the wife according to the agreement or understanding between herself and husband. Whoever, therefore, holds the legal title, holds it for the uses of whatever purpose the husband and wife had agreed that it should be devoted to. The legal title outstands in a third person subject to the decree of a competent court. The assignee cannot get the legal title without coming into a competent court and obtaining a decree for its conveyance to him; and such court will then decree according to the equity of the case. This court is competent under the third clause of section 4972, Rev. St. U. S., to adjudicate specific claims upon the bankrupt's estate.

It is a general proposition that, in equity, where the conversion of the wife's property from one form into another has been attempted, or consummated, the court will consider that as having been done which should have been done. I had occasion to examine the law of this subject very elaborately in the bankruptcy Case of Anderson [Case No. 351,] where a great number of authorities on the subject were reviewed; some of which are referred to in the briefs of counsel in this cause. That was a case in which, through the fraud of one Robert Gibbory, there had been an actual conversion, by the husband, of the wife's real estate to his own name and possession, by legal deeds; and it was decreed that he was to be treated as a trustee for his wife; and that his lands did not pass to his assignee by the assignment in bankruptcy; and were not bound by the liens of his judgment creditors. In the present case,

the conversion has been only partially effected; and the court may, with greater propriety, direct that that shall be done which ought to have been done; the more, because it had been agreed by the husband and wife that the investment in the dwell-house should be for her own benefit. The disposition of courts in recent years has been to go very far, and to reach out very diligently and searchingly to preserve a wife's inheritance to her separate use. It is only where fraud appears, that this policy has not been pursued; or where the rights of bona-fide purchasers, without notice, have intervened between the conversion and the settlement. And the courts invariably hold, in this last class of cases, that the purchase must be actual, and not merely constructive: —that purchase-money must have actually been paid before notice; the giving of a bond on time or the entering into a contract for the future payment of money not being sufficient. See 2 White & T. Lead. Cas. Eq. 62; 2 Atk. 241; 3 Atk. 304, 804. And in this connection the courts hold that a judgment creditor is not a purchaser. 2 White & T. Lead. Cas. Eq. 92, and cases there cited; Id. 101, 102.

7. The seventh exception is not well taken, in alleging that there is, in this case, no property out of which the wife can claim a settlement; for the allegation is that the dwelling-house property is the result of the expenditure of her separate estate. That is, of course, therefore, the property out of which her settlement must be made, if made at all.

As to the objection that the allegations of Mrs. Campbell's petition cannot be taken as true, because process was not served, nor opportunity given to the assignee or creditors to answer, that objection has already been considered in connection with exceptions two and three. In the summary proceeding, the exception takes the place of the answer, and the reference offers full opportunity for counter testimony. The sworn petition of Mrs. C., supported by the sworn testimony of the bankrupt, and of the witnesses Kreger and Fields, taken by the register, with full opportunity of cross-examination afforded to the assignee and to the creditors, all of whom had been summoned before the register, constitute the proof on which the register based his report. It is sufficient proof in form and substance to justify a decree. If the assignee and lien creditors failed, in the period of six weeks, to make answer to the petition, and to adduce testimony in refutation of the allegations of the petition and of the testimony of the bankrupt and other witnesses, the court has a right to presume that no counter testimony was available, and that no denial by answer could be made to the allegations of the petition. These allegations are themselves sufficient, if true, to warrant the court in decreeing a settlement; at least to the extent of requiring that the

separate means of the wife, which have been expended upon the dwelling-house property by the husband, under the circumstances set forth in the wife's petition, shall not be diverted to the payment of the husband's debts.

On the merits, I think there can be no difficulty in this case. The only question admitting of doubt is, whether it was competent for the wife to come into the bankruptcy proceeding for the adjudication of the matters set forth in her petition; and whether it is competent for the district court, on its bankruptcy side, in the summary bankruptcy proceeding, to adjudicate her rights on the petition, on the reference to the register and on the exceptions of the assignee to the register's report. It is well settled that the assignee could not, by his petition, have brought the wife and the person holding the legal title in the dwelling-house, into the bankruptcy court against their will; nor required them, without their consent, to submit to a summary adjudication of the wife's rights by that court. The case of Smith v. Mason, 14 Wall. [81 U. S.] 419, settles that point; and the case of Humes v. Scruggs, 4 Otto [94 U. S.] 22, somewhat similar in its facts to the present one, shows that a plenary proceeding is the proper one to be employed where the interests of third parties are to be affected. But if third parties who are incidentally connected with the estate and assets in bankruptcy, are proceeded against summarily by the assignee, and choose to come in voluntarily, thereby waiving the rights which they have under the ruling in Smith v. Mason, then we have the authority of Stickney v. Wilt, 23 Wall. [90 U. S.] 150, for holding that that consent of theirs gives jurisdiction to the court in bankruptcy. Just as clearly may such parties (as Mrs. Campbell for instance, in this case), come in by their own petition, and ask an adjudication of their rights. Here the assignee himself invoked the authority of the court to take the summary proceeding before the register and to sell real estate free of incumbrances. Spurred to action by this petition of the assignee for authority to sell the property in which she claimed a settlement free of incumbrances, the wife of the bankrupt, in favor of whose equitable right to a settlement out of one parcel of the bankrupt's real estate a legal title outstands, comes voluntarily in, by petition, and prays that that right may be adjudicated by this court. The case of Stickney v. Wilt affords authority for the court to proceed in the summary manner when invoked by the assignee, and concurred in by the bankrupt's wife.

The court referred both petitions, by the same order, to the register, and all parties have had the period of six weeks to make good their cases by testimony; they have had a hearing, after personal notice, before the register; and they now have a day in court for final argument and all proper motions. The interlocutory petition and the rule nisi are the principal instruments of pleading in

the summary proceeding, and correspond with the bill and answer in the plenary one, which they substitute. As to general creditors in bankruptcy, even the petition and rule are unnecessary. See In re Judkins [Case No. 7,560].

On the pleadings and proceedings, therefore, as well as on the merits, I feel warranted in overruling the seventh exception and making a decree in the case. I do so in view of section 4972 of the Revised Statutes of the United States, which extends the jurisdiction of the bankruptcy courts of the United States, amongst other things, to "the ascertainment and liquidation of the liens and other specific claims" on the assets of the bankrupt. Having, under this section, full jurisdiction over the subject-matter of the claim, the authority of the bankruptcy court was defective only in respect to such persons as are but incidentally connected with the bankrupt's estate. The case of Stickney v. Wilt [supra], removes any difficulty which the court might have on that score, by deciding that, where such persons come voluntarily into the bankruptcy court, as Mrs. Campbell has done here, that court may bind them by its decrees. The seventh exception of the assignee is therefore overruled.

Decree entered directing the assignee to pay to Mrs. Campbell the sum of six thousand dollars out of the proceeds of said house and lot, and that the stocks, etc., set forth in her petition be set apart to her for her sole and separate use in lieu of her contingent right of dower.